UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.                                                          Case No. 5:26-cv-3953

SANDERS FAMILY OFFICE, LLC and
MARGARET SANDERS,

Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## I.    INTRODUCTION

1.    From August 2020 to March 2023 ("Relevant Period"), Defendants Sanders Family Office, LLC ("SFO") and its sole manager and member Margaret Sanders ("Sanders"; together with SFO, "Defendants"), both directly and through a team of sales agents, solicited and raised approximately $40 million from about 600 investors for Wells Real Estate Investment, LLC ("Wells").

2.    Wells, its owner, Janalie C. Joseph a/k/a Janalie C. Bingham ("Bingham"), and her husband, Jean Joseph ("Joseph"), an undisclosed felon control person, orchestrated a fraudulent, unregistered securities offering from at least January 2020 to April 2024. They raised at least $56 million, through the sale of promissory notes titled Memorandum of Indebtedness (the "Notes"), from approximately 660 investors nationwide. They claimed that Wells would use investor funds to acquire and improve income-producing properties primarily located in South Florida, and that

their investments would be secured by real estate assets. In reality, they made Ponzi-like payments with new investor funds to pay older investors, used investor funds to pay undisclosed commissions to sales agents, and lied about the size, value, and operations of Wells's real estate portfolio, all while Bingham and Joseph misappropriated investors funds. Wells's investors were not told about these material facts when they purchased the Notes.

3.      Wells collapsed in August 2024 when the Commission filed its emergency action to stop the fraudulent scheme in the United States District Court for the Southern District of Florida. *SEC v. Wells Real Estate Investment, LLC*, No. 24-cv-80980 (S.D. Fla. Aug. 14, 2024) ("Wells Case"). Among other relief, the Commission obtained the appointment of a receiver over Wells and its subsidiaries.

4.      Defendants played a major role in soliciting and raising money from investors and sold a large majority of the Notes issued by Wells. Defendants promoted Wells's investment offerings, advised investors about the merits of the investment, and assisted with sales efforts by hosting online meetings and presentations. Defendants, who recruited, trained, and supervised a network of sales agents, earned at least $2.97 million in transaction-based sales commissions from the sale of the Notes.

5.      SFO also established a relationship with a financial institution that facilitated rollovers of investors' retirement funds, for example, from 401(k) accounts, so that those retirement funds could be used to purchase the Notes. SFO directly assisted investors in this rollover process.

6.      Furthermore, during the Relevant Period, Defendants were not registered with the Commission as broker-dealers, and were not associated with a registered broker-dealer. Wells's

2

securities offering was not registered with the Commission, nor did it qualify for an exemption from registration. Defendants thus were not permitted to sell Wells's securities.

7.     By engaging in this conduct, Defendants violated Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c), and Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a)(1). Unless enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

## II.    DEFENDANTS

8.     **SFO** is a California limited liability company which, according to its company filings, purports to have a principal place of business in Sacramento, California. However, SFO operates from Boerne, Texas. Sanders is the member, manager, and owner of SFO.

9.     **Sanders** resides in Boerne, Texas, and previously held insurance and real estate licenses.

## III.    OTHER RELEVANT ENTITIES AND INDIVIDUALS

10.     **Wells** is a Wyoming limited liability company with its principal place of business in West Palm Beach, Florida. Wells acquired, sold, borrowed against, and managed commercial and residential real estate and was controlled by Bingham and Joseph. On August 14, 2024, the court in the Wells Case granted the Commission's motion to appoint a receiver over Wells and its subsidiaries. Wells Case at DE 11. On October 17, 2024, the same court entered a Judgment for Permanent Injunctive Relief against Wells. *Id.* at DE 71.

11.     **Bingham** is a resident of Boca Raton, Florida, and was Wells's founder, CEO, and 100% owner. While operating Wells, Bingham was married to Joseph, and together they controlled Wells. On December 5, 2024, the Court in the Wells Case entered a Judgment for Permanent Injunctive Relief against Bingham. *Id.* at DE 83. After the Wells Case was filed, a federal grand

jury indicted Bingham for one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and ten counts of wire fraud, in violation of 18 U.S.C. § 1343, based on the facts underlying the Wells Case. *U.S. v. Joseph, et al.*, No. 25-cr-20483 (S.D. Fla. Oct. 30, 2025) ("Criminal Case"). On February 17, 2026, Bingham pleaded guilty to conspiracy to commit wire fraud under 18 U.S.C. § 1349. *Id.* at DE 62.

12.     **Joseph** is currently in federal detention. Joseph is the former manager of Evergreen United Investments, LLC ("Evergreen"). In April 2019, a federal grand jury indicted Joseph and Evergreen on one count of wire fraud in violation of 18 U.S.C § 1343. *See U.S. v. Joseph*, No. 19-cr-20177 (S.D. Fla. Apr. 4, 2019). Joseph pleaded guilty in November 2019, was sentenced to 15 months imprisonment, and was ordered to pay approximately $3 million in restitution.

13.     On December 3, 2024, the Court in the Wells Case entered a Judgment for Permanent Injunctive Relief against Joseph. *Id.* at DE 81. After the Wells Case was filed, a federal grand jury indicted Joseph for one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and ten counts of wire fraud, in violation of 18 U.S.C. § 1343, based on the same facts underlying the Wells Case. Criminal Case at DE 1. On March 17, 2026, following the filing of a superseding indictment, Joseph pleaded guilty to one count of conspiracy to commit money laundering under 18 U.S.C. § 1956(h). *Id.* at DE 73-75. On June 11, 2026, Joseph was sentenced to 240 months of imprisonment.

IV.     **JURISDICTION AND VENUE**

14.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a), and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e) and 78aa.

4

15.     Under the Securities Act and Exchange Act, the Court has personal jurisdiction over Defendants and venue is proper in the Western District of Texas because: (a) Defendants are located in this District; (b) the transactions constituting the Defendants' federal securities laws violations occurred, among other places, in this District; and (c) a substantial part of the events or omissions giving rise to the violations of the Securities Act and the Exchange Act occurred in the District. Further, Defendants have consented to the Court's jurisdiction.

16.     In connection with the conduct alleged in this Complaint, Defendants, directly and indirectly, alone or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## V.     FACTUAL ALLEGATIONS

### a.     Wells's Unregistered Securities Offering

17.     Wells held itself out to the public through its website and in marketing and offering materials as a "real estate acquisition and development company that focuses on identifying, acquiring, and managing value-added residential and commercial real estate assets in strategically targeted locations in the United States. . ." The website touted Wells's "Prudent Decision-Making, Rigorous Analysis, And A Focus on Sustainable Growth By Building Green Communities And Stronger Families One Investment At A Time."

18.     The Notes were offered to the public as investments, with terms between 12-to-36 months. Depending on the term selected by the investor, the Notes offered different interest rates, 10% to 12% annual interest on 18- and 28- month notes, or a lump-sum 99% interest payment at the end of the 36-month note. Other than selecting the term length, investors had no ability to

negotiate the terms of the Notes, and relied on form promissory note documentation provided by Wells, via Sanders, SFO, or one of the sales agents working for SFO.

19.    Investors in the Notes had no ability to select properties purchased by Wells, to manage those properties, or to make decisions about Wells's real estate portfolio. Wells retained all decision-making power with respect to its real estate portfolio.

20.    Wells told investors that it would use funds raised from the sale of Notes to invest in and manage real estate, purportedly to generate income and enhance asset values, and that the Notes were collateralized by real estate owned by Wells.

21.    The Notes constitute investment contracts and are, therefore, securities because investors contributed money into a common enterprise in which their fortunes were inextricably tied to Wells's success, as the company selected, acquired, and managed the real estate and business activities that were supposed to generate returns. Moreover, investors reasonably expected profits to come solely from the entrepreneurial and managerial efforts of Wells and Bingham, and did not exercise any control over Wells's business activities. The Notes also are promissory notes constituting securities because they had terms longer than nine months, were sold with the purpose of raising money for the general use of the business enterprise and to finance substantial investments, and investors were interested primarily in the profit the Notes were expected to generate.

22.    During the Relevant Period, Wells's offering was not registered with the Commission and the offering had no applicable exemption from registration.

**b. Wells's Material Misrepresentations to Investors and Misuse and Misappropriation of Investor Funds**

23. Wells fraudulently raised approximately $56 million from about 660 investors by selling the Notes, predominantly through a network of independent sales agents, including Defendants who raised a large majority of investor funds.

24. Wells was a fraudulent scheme through and through. Among other things, Wells: (i) misrepresented to investors the size, value, and operations of Wells's real estate portfolio and hid that the real estate was already heavily mortgaged; (ii) used investor money to pay exorbitant transaction based commissions to sales agents who raised investor funds; (iii) used newer investor funds to pay older investors; (iv) secretly gambled and lost millions of dollars of investor funds on highly speculative futures and options contracts; and (v) misappropriated investor funds and transferred them to Wells's CEO Bingham and her husband, Joseph, a convicted felon and undisclosed control person, for their personal use and benefit.

25. Many of the investors who purchased the Notes incurred catastrophic losses, including losing retirement funds.

**c. Defendants' Offer and Sale of Securities in Unregistered Transactions While Acting as Unregistered Brokers**

26. Defendants played a significant role in raising investor money for Wells. Indeed, they raised most of the money that Wells ultimately received from investors.

27. Between August 6, 2020, and March 2023, Defendants directly, and through sales agents located in several states, solicited investors on behalf of Wells, offered and sold Wells Notes, and raised approximately $40 million from about 600 investors, including seniors and unaccredited investors.

7

28.     Sanders frequently made presentations about Wells's investment opportunity through regular Zoom meetings with sales agents and prospective investors. She spoke to prospective investors about the valuation of Wells's properties, answered investors' questions about the terms of the Notes, and advised them about when and how frequently they could expect to receive interest payments.

29.     Additionally, Defendants trained sales agents on how to pitch the Wells investment, and directed them to forward Wells's sales deck, presentations, and promotional videos to prospective investors. They instructed their sales agents not to contact Wells directly with questions about the Notes, and instead instructed sales agents to route investor questions directly to them.

30.     Defendants also directly assisted investors in opening self-directed IRA accounts at a financial institution—and trained sales agents to do the same—so that tax-deferred retirement account funds could be used to purchase the Notes.

31.     Defendants together received at least $2,977,099.53 in transaction-based sales commission payments from Wells, either paid personally to Sanders or to SFO.

32.     Defendants acted in concert to offer and sell the Notes, and Sanders owned and exercised complete control over SFO's operations. Therefore, Defendants may be held jointly and severally liable for their misconduct.

33.     In approximately March 2023, Defendants had a falling out with Wells, and Defendants stopped offering Wells Notes to investors.

34.     Upon information and belief, Defendants continued selling other unregistered securities after they stopped soliciting investors for Wells Notes.

35.    Neither Sanders nor SFO has ever held any securities licenses or been associated with any entity, including broker-dealer, registered with the Commission.

36.    Defendants voluntarily executed tolling agreements with the Commission tolling and suspending all applicable statute of limitations from August 6, 2025, through June 24, 2026.

## VI.    CLAIMS FOR RELIEF

### Count I
### Violations of Securities Act Sections 5(a) and (c)

37.    The Commission repeats and realleges Paragraphs 1 through 36 of this Complaint.

38.    No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the Notes offered and sold by Defendants as described in this Complaint and no exemption from registration existed for those securities and transactions.

39.    From August 2020 through March 2023, Defendants directly and indirectly:

a.    made use of any means of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

b.    carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments or transportation, for the purpose of sale or delivery after sale; or

c.    made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the Commission as to such securities.

40.    By reason of the foregoing, Defendants, directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

**Count II**
**Violations of Exchange Act Section 15(a)(1)**

41.    The Commission repeats and realleges Paragraphs 1 through 36 of this Complaint.

42.    From August 2020 through March 2023, Defendants, directly or indirectly, by use of the mails or any means or instrumentality of interstate commerce, effected transactions in, or induced or attempted to induce the purchase or sale of securities, while they were not registered with the Commission as a broker or dealer or when not associated with an entity registered with the Commission as a broker-dealer.

43.    By reason of the foregoing, Defendants, directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

## VII.    RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court find Defendants committed the alleged violations, and:

### a.    Permanent Injunctive Relief

Issue permanent injunctions enjoining Defendants from violating Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c), and Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

### b.    Disgorgement and Prejudgment Interest

Issue an order directing Defendants to disgorge, jointly and severally, all ill-gotten gains or proceeds received from the acts and/or conduct described in this Complaint, including prejudgment

interest thereon, pursuant to Exchange Act Sections 21(d)(3), (d)(5), and (d)(7), 15 U.S.C. §§ 78u(d)(3), (d)(5), and (d)(7).

### c. Civil Penalties

Issue an order directing Sanders to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

### d. Further Relief

Grant any other relief that the Court deems necessary and appropriate.

### e. Retention of Jurisdiction

Further, the Commission requests that the Court retain jurisdiction over this action and over Defendants in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of the Court.

## VIII.  DEMAND FOR JURY TRIAL

The Commission demands a trial by jury on any and all issues so triable.

11

Dated:  June 23, 2026                    Respectfully submitted:


                                         /s/ Melissa Armstrong
                                         Melissa Armstrong
                                         Texas Bar No. 24050234
                                         100 F Street NE
                                         Washington, DC 20549
                                         Tel: (202) 551-4724
                                         Fax: (202) 772-9286
                                         armstrongme@sec.gov

                                         and

                                         Brian Lechich*
                                         Florida Bar No. 84419
                                         801 Brickell Avenue, Suite 1950
                                         Miami, FL 33131
                                         Tel: (305) 982-6300
                                         Fax: (305) 813-9372
                                         lechichb@sec.gov

                                         *Attorneys for Plaintiff*
                                         *U.S. Securities and Exchange Commission*

*Pro hac vice motion forthcoming